# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ABDALLAH BAKRI,**

        **Plaintiff,**

**-vs-**                                           **Case No. 6:08-cv-1572-Orl-28GJK**

**CITY OF DAYTONA BEACH, JAMES ZIEHL, and BRIAN MILLIGAN,**

        **Defendants.**

_____

## ORDER

Plaintiff Abdallah Bakri ("Plaintiff") brings the instant action pursuant to 42 U.S.C. § 1983, asserting violations of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution against the City of Daytona Beach, Florida ("the City") and two of its police officers, James Ziehl and Brian Milligan. Defendants have filed motions for summary judgment (Docs. 44 & 45), and Plaintiff has responded to these motions in a consolidated opposition memorandum (Doc. 49). This Order disposes of the City's motion; ruling is reserved on the officers' motion pending oral argument thereon.

### I. Background

On the afternoon of September 15, 2004, Defendant Ziehl, a detective with the Daytona Beach Police Department, received a tip from a confidential informant that Wail Bakri ("Wail"), a suspected drug dealer for whom there were outstanding arrest warrants, was washing a car in the back of a Hess gas station on Ridgewood Avenue in Daytona Beach. Acting pursuant to that tip, Ziehl contacted Milligan, a patrol officer, for assistance

in arresting Wail pursuant to those warrants at the gas station. The gas station was owned by Plaintiff—Wail's father.

Ziehl, Milligan, and two other officers arrived at the station and observed the car—a silver Dodge Intrepid—but not Wail. Ziehl and Milligan entered the store area of the gas station and spoke to Huda Bakri ("Huda")—Plaintiff's wife and Wail's mother—who was working at the cash register. Huda began screaming, and Plaintiff, who was sleeping in an office in the building, heard the noise and emerged from the office. At that point, the officers approached Plaintiff and told him that they were looking for Wail and that there was a warrant for Wail's arrest. Plaintiff asked to see the paperwork, but the officers did not have the paperwork with them. The officers asked to be granted access to the office from which Plaintiff had emerged, but Plaintiff asked for a search warrant. The officers did not have a search warrant, and Plaintiff did not grant them access to the office.

The officers told Plaintiff that he would be arrested if he did not allow them to search the office. Plaintiff refused them access to the office, and Plaintiff was arrested for resisting arrest without violence.[1] Plaintiff claims that during his arrest, his left wrist was broken and his back was injured.

Plaintiff filed this lawsuit on September 12, 2008. (Doc. 1). Three counts of the Third Amended Complaint (Doc. 30) remain: Count I, in which Plaintiff brings a claim against the City pursuant to 42 U.S.C. § 1983 for violation of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution; Count II, in which Plaintiff brings a claim against Ziehl

---

[1] As the officers were handcuffing Plaintiff, Wail emerged from the office and surrendered.

and Milligan pursuant to 42 U.S.C. § 1983 for violation of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution; and Count VIII, in which Plaintiff brings a state law malicious prosecution claim against Defendant Ziehl only.[2]  Defendants have moved for summary judgment on each of these counts.

## II.  Discussion

### A.  Summary Judgment Standards

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of establishing that no genuine issues of material fact remain.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales,

---

[2] Plaintiff alleged other counts in the Third Amended Complaint, but those counts have been dismissed by prior Order.  (See Doc. 35).  Only the three counts noted in the text remain for disposition.

Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.' Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Sw. Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

### B. The Merits of the City's Motion (Doc. 45)

The doctrine of respondeat superior does not apply in actions under § 1983, and "[a] city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of municipal policy or custom." Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1293 (11th Cir. 2009). Plaintiff alleges in Count I that the City officially adopted policies and engaged in customs or policies regarding failure to train, supervise, discipline, and adequately screen its police department, and Plaintiff asserts that therefore the City may be held liable for the alleged violation of his constitutional rights by the police officers.

"Municipal policy or custom may include a failure to provide adequate training if the deficiency 'evidences a deliberate indifference to the rights of its inhabitants.'" Id. (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "To establish a city's deliberate indifference, 'a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.'" Id. (quoting Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir.

1998)).  "A city may be put on notice in two ways"—if it is aware of "a pattern of constitutional violations" but "nevertheless fails to provide adequate training" or "if the likelihood for constitutional violation is so high that the need for training would be obvious."  Id.

"In resolving the issue of the City's liability, 'the focus must be on the adequacy of the training programs in relation to the tasks the particular officers must perform,' and not merely on the training deficiencies for a particular officer."  Id.  "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."  City of Canton, 489 U.S. at 390-91.  "It is thus irrelevant what training each specific officer present at the scene was given or retained."  Lewis, 489 F.3d at 1293.

The City argues in its summary judgment motion that there is no evidence of a municipal custom or policy causing a constitutional violation in this case, nor of deliberate indifference to a need for more or different training of police officers.  In support of its motion, the City has submitted affidavits from two of its police captains.  One attests that the City requires its police officers to undergo police academy training and obtain certification from the Florida Department of Law Enforcement prior to becoming a law enforcement officer.  (Szabo Aff., Ex. 5 to Doc. 46, ¶ 4).  Additionally, after being hired, officers must undergo additional training, including a minimum of six to eight weeks of classroom training followed by field training with an experienced trainer.  (Id. ¶ 5).  The City also had a directive regarding use of force and warrantless arrests on the date of the incident in question here, and claims of misconduct are investigated.  (Skipper Aff., Ex. 6 to Doc. 46, ¶¶ 3-6).

In response to the City's motion, Plaintiff argues that the City failed to investigate the

incident involving Plaintiff; that Defendant Ziehl had been cited previously for improper handcuffing; and that Ziehl "failed to follow" and exhibited "unbridled arrogance" in "defy[ing] the City's own directives." (Pl.'s Mem., Doc. 49, at 2-3). Plaintiff's arguments and evidence miss the mark. First, the City's failure to investigate *this* incident—even if taken as true at this point—could not support imputation of knowledge to the City of a need to train *prior* to this incident and could not have caused any constitutional violation in this case. Second, the prior handcuffing incident involving Ziehl is not similar to anything that occurred in this case; the evidence submitted by Plaintiff on this point reflects that Ziehl was issued a warning in a written memorandum on October 22, 2001 because he handcuffed a female prisoner in the front of her body instead of in the back and left her in a witness room with some evidence. (Ex. A, Attach. to Doc. 50). Ziehl's actions as noted in that memorandum created chain-of-custody and safety issues, but they did not involve an alleged improper arrest or use of excessive force. A plaintiff cannot establish a municipal liability claim based on prior events when he cannot "point to any other incidents involving similar facts." <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1162 (11th Cir. 2005) (citing <u>Gold</u>, 151 F.3d at 1351). Finally, Plaintiff repeatedly argues that in his actions Ziehl *defied the City's policies*, but this assertion belies Plaintiff's contention that the City's policies caused any alleged constitutional deprivation. And, to the extent Plaintiff relies on Ziehl's misunderstanding of the law as support for his claim, that reliance is misplaced on the municipal liability issue; as noted earlier, the focus is on the City's training program and not on any particular officer's knowledge. No deficiency in training or policy has been identified by Plaintiff; thus, even assuming arguendo that a constitutional violation occurred here, the City cannot be held

responsible for any such violation. The City's summary judgment motion shall be granted.

### III. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion for Summary Judgment (Doc. 45) filed by the City of Daytona Beach is **GRANTED**.

2. Ruling on the Motion for Summary Judgment (Doc. 44) filed by Defendants Ziehl and Milligan is **RESERVED** pending oral argument thereon. At the previously-scheduled pretrial conference, counsel shall be prepared to argue the issues raised in that motion, especially the issue of whether there was arguable probable cause for the arrest of Plaintiff.

**DONE** and **ORDERED** in Orlando, Florida this 4th day of May, 2010.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record