**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ABDALLAH BAKRI,**

        **Plaintiff,**

**-vs-**                                            **Case No. 6:08-cv-1572-Orl-28GJK**

**CITY OF DAYTONA BEACH, JAMES ZIEHL, and BRIAN MILLIGAN,**

        **Defendants.**
_____

## ORDER

Plaintiff Abdallah Bakri ("Plaintiff") filed the instant action pursuant to 42 U.S.C. § 1983, asserting violations of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution against the City of Daytona Beach, Florida ("the City") and two of its police officers, James Ziehl and Brian Milligan. The case is currently before the Court on the motion for summary judgment filed by Defendants Ziehl and Milligan (Doc. 44) and Plaintiff's response thereto (Doc. 49).[1] The Court heard oral argument on the motion on May 6, 2010. Having considered argument of counsel, the record evidence, and pertinent law, the Court concludes that the officers' motion must be granted in part and denied in part.

### I. Background

On the afternoon of September 15, 2004, Defendant Ziehl, a detective with the Daytona Beach Police Department, received a tip from a confidential informant that Wail

---

[1]The City also filed a motion for summary judgment (Doc. 45). It was granted in a prior Order (Doc. 65).

Bakri ("Wail"), a suspected drug dealer for whom there were outstanding arrest warrants, was washing a car in the back of a Hess gas station on Ridgewood Avenue in Daytona Beach. Acting pursuant to that tip and the arrest warrants, Ziehl contacted Milligan, a patrol officer, for assistance in arresting Wail at the gas station. The gas station was owned by Plaintiff—Wail's father.

Ziehl, Milligan, and two other officers arrived at the station and observed the car that had been described by the confidential informant—a silver Dodge Intrepid—but not Wail. They also observed an open door at the side of the gas station. While the other officers remained outside, Ziehl and Milligan entered the store area of the gas station through the front door and spoke to Huda Bakri ("Huda")—Plaintiff's wife and Wail's mother—who was working at the cash register. Huda began screaming, and Plaintiff, who was sleeping in an office in the building, heard the noise and emerged from the office. At that point, the officers approached Plaintiff and told him that they were looking for Wail and that there was a warrant for Wail's arrest. Plaintiff asked to see some paperwork, but the officers did not have any paperwork with them. The officers asked to be granted access to the office from which Plaintiff had emerged, and Plaintiff asked whether the officers had a search warrant. The officers did not have a search warrant, and Plaintiff did not grant them access to the office.

The officers told Plaintiff that he would be arrested for obstructing them if he did not allow them to search the office. Plaintiff continued to refuse the officers access to the office. The officers arrested Plaintiff and, after a struggle, placed Plaintiff in handcuffs. During the handcuffing of Plaintiff, Wail emerged from the back office and surrendered. Plaintiff claims

that during the arrest, his left wrist was broken and his back was injured, and Ziehl asserts that he suffered scrapes and abrasions in the struggle. Later that day, Plaintiff was released on a Notice to Appear on a charge of resisting arrest without violence.[2] (See Ex. B to Ziehl Aff., Attach. to Doc. 46).

Two days later, Ziehl completed an affidavit on a charge of resisting *with* violence,[3] citing the abrasions that Ziehl received during the struggle. (See Ex. C to Ziehl Aff.). On October 12, 2004, a nolle prosequi was filed regarding the resisting without violence charge, (Ex. D to Doc. 50), but on October 27, 2004, an Information was filed charging Plaintiff with resisting *with* violence, (Ex. F to Doc. 46). Plaintiff entered into a pretrial intervention contract on the resisting with violence charge, (Ex. G to Doc. 46), and on May 8, 2006, a "Notice of Completion of Pre-Trial Intervention Agreement and Announcement of No Information" was filed by the state attorney, (Ex. H to Doc. 46).

Plaintiff filed this lawsuit on September 12, 2008. (Doc. 1). All but two counts of the Third Amended Complaint (Doc. 30) have been disposed of by prior Orders. (See Docs. 35 & 65). In the remaining counts, Plaintiff brings a claim against Ziehl and Milligan pursuant to 42 U.S.C. § 1983 for violation of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution (Count II) and a state law malicious prosecution claim against Defendant Ziehl only (Count VIII). Defendants have moved for summary judgment on each of these counts.

---

[2] § 843.02, Fla. Stat.

[3] § 843.01, Fla. Stat.

## II. Discussion

### A. Summary Judgment Standards

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.' Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Sw. Airlines Co.,

243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

B.  The Merits of the Officers' Motion (Doc. 44)

1.  § 1983 Claim (Count II)

With regard to the § 1983 claim, Officers Ziehl and Milligan assert entitlement to the defense of qualified immunity.  "Qualified immunity protects municipal officers from liability in § 1983 actions as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "To receive qualified immunity, the officer must first show that he acted within his discretionary authority."  Id.  In the instant case, there is no assertion that Officers Ziehl and Milligan were not acting within their discretionary authority at the time of the events at issue.  Thus, "the burden . . . shifts to the plaintiff to show that qualified immunity should not apply."  Id.

In determining whether officers enjoy qualified immunity, courts typically employ a two-part process, determining "whether the officer's conduct amounted to a constitutional violation" and "whether the right violated was 'clearly established' at the time of the violation." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).  The Saucier opinion directed that the two steps of analysis be conducted in order, but, as noted in Lewis, the Supreme Court "recently clarified . . . that the order of the inquiry is fluid, providing the Court with the flexibility to focus on the determinative question."  Id. (citing Pearson v. Callahan, 129 S. Ct. 808 (2009)).  In other words, it is now permissible but "not mandated that the Court examine

the potential constitutional violation under Saucier step one prior to analyzing whether the right was clearly established under step two." Id. (citing Pearson).

The Fourth Amendment protects against unreasonable searches and seizures. Both an unlawful arrest and the use of excessive force in effectuating even a lawful arrest are encompassed by this prohibition; both qualify as unreasonable seizures. In this case, Plaintiff asserts both that he was arrested unlawfully—that is, without probable cause—and that the force used by the officers in effectuating the arrest was excessive.

"'In Fourth Amendment terminology, an arrest is a seizure of the person, and the 'reasonableness' of an arrest is, in turn, determined by the presence or absence of probable cause for the arrest.'" Bates v. Harvey, 518 F.3d 1233, 1239 (11th Cir. 2008) (quoting Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007)). A law enforcement official has probable cause to arrest when the facts and circumstances of which he is aware are "'sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.'" Skop, 485 F.3d at 1137 (quoting United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002)). Probable cause is assessed on the totality of the circumstances. See id.

Because of the protection afforded by qualified immunity, however, even if probable cause is lacking a law enforcement officer will not be personally liable for the arrest if the officer's judgment that probable cause existed was reasonable albeit mistaken. Id. The true test is "whether 'reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendant[] could have believed that probable cause existed to arrest.'" Id. (quoting Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002)) (emphasis omitted). "Thus, to establish a constitutional violation in a § 1983 false arrest claim, the plaintiff

ordinarily must prove that the officer arrested h[im] without at least arguable probable cause to believe []he had committed or was committing a crime." Bates, 518 F.3d at 1239.

"Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime." Skop, 485 F.3d at 1137 (citing Crosby v. Monroe County, 394 F.3d 1328, 1333 (11th Cir. 2004)). Here, Plaintiff was arrested for violating section 843.02, Florida Statutes—"Resisting officer without violence to his or her person." This statute provides that it is a first-degree misdemeanor for anyone to "resist, obstruct, or oppose any [law enforcement officer] . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer." The elements of the offense are thus (1) that the officer was "engaged in the lawful execution of a legal duty" and (2) that Plaintiff's "action constitute[d] obstruction or resistance of that lawful duty." H.H. v. State, 775 So. 2d 397, 398 (Fla. 4th DCA 2000).

The facts relevant to resolution of the issue of probable cause are not in dispute, and based on those facts, there was not probable cause or arguable probable cause for the arrest of Plaintiff. Plaintiff was entitled under the law to refuse the officers admission to the back office, and therefore his arrest for refusing to do so was unlawful.

Under the Fourth Amendment, absent exigent circumstances a law enforcement officer may not legally search for the subject of an arrest warrant in the home or business of a third party without first obtaining a search warrant. See Steagald v. United States, 451 U.S. 204 (1981); Pembaur v. City of Cincinnati, 475 U.S. 469, 474 (1986); O'Rourke v. Hayes, 378 F.3d 1201, 1209-10 (11th Cir. 2004) (reiterating that the considerations noted in Steagald "apply not only in homes, but in any places where a third party has a reasonable

expectation of privacy. . . . The simple fact that [the officer] had an arrest warrant for [probationer who worked at Plaintiff's office] did not authorize him to enter the office where [Plaintiff] worked."). In the instant case, it is undisputed that the officers were attempting to arrest Wail pursuant to outstanding felony warrants for his arrest, and it is also undisputed that the officers did not have a search warrant. Additionally, the record evidence reflects that the office to which the Defendants sought entry was not open to the public and was locked, and therefore Plaintiff had a reasonable expectation of privacy in that office. Thus, absent exigent circumstances or some other basis for excusing the requirement of a warrant, the officers were not entitled to enter the office without a search warrant. Although the officers have proposed several bases for their alleged entitlement to enter into the back office to search for Wail, none of those bases is legally supportable.

The officers attempt to rely on section 562.41, Florida Statutes, as justifying a right to search the gas station, including the back office. This statute provides that "[a]ny . . . police officer may make searches of persons, places, and conveyances of any kind whatsoever in accordance with the laws of this state for the purpose of determining whether or not the provisions of the Beverage Law are being violated" and that licensees under the Beverage Law, "by the acceptance of their license, agree that their places of business shall always be subject to be inspected and searched without search warrants by the authorized employees of the division and also by . . . police officers during business hours or at any other time such premises are occupied by the licenses or other persons." § 562.41(1), (5), Fla. Stat. Plaintiff was licensed under the Beverage Law, and the officers thus submit that his premises was subject to inspection at any time without a warrant.

The statute provides, however, that police officers may make searches of licensees' premises "for the purpose of determining whether or not the provisions of the Beverage Law are being violated"—not for any purpose whatsoever. Indeed, the statute has long been interpreted by Florida courts as providing only a limited right of search for a particular purpose, and warrantless searches "where entry is premised upon suspicion of a crime other than those specified in the . . . statute" are prohibited. State v. Patterson, 444 So. 2d 1168, 1169 (Fla. 4th DCA 1984); see also Carter v. State, 238 So. 2d 681, 683 (Fla. 1st DCA 1970) ("[T]he authority of a beverage agent to search the premises of a beverage licensee without a search warrant is restricted to occasions in which the beverage agent is acting in good faith 'in the enforcement of the beverage law.'"). Detective Ziehl testified in his deposition that he was not on the premises for the purpose of enforcing the beverage law but to apprehend Wail. (See Ziehl Dep. December 1, 2009, Ex. 3 to Doc. 50, at 114; see also id. at 84; Ziehl Dep. March 3, 2005, Ex. 1 to Do. 50, at 7). Plainly, Ziehl was not conducting a "good faith" inspection under the Beverage Law at the time of the events at issue, and he was not entitled to use it as a ruse to gain access to the back office on September 15, 2004, nor may he rely on it now in attempting to justify the arrest of Plaintiff.[4]

---

[4]Any violation of law by a beverage licensee on the licensed premises allows for revocation or suspension of a beverage license. See § 561.29(1)(a), Fla. Stat. After the incident at issue here, the Department of Business and Professional Regulation commenced an administrative action against Plaintiff based on his arrest for resisting without violence. (See Ex. I to Doc. 46). Plaintiff requested and was given a hearing in that action, and he stipulated to the facts alleged in the administrative charge. (See id.; see also Recommended Order, Ex. J to Doc. 46).

During oral argument on the summary judgment motion—but not in the summary judgment motion itself—Defendants asserted that Plaintiff's stipulation to the facts in the administrative charge amounted to a stipulation as to the existence of probable cause for his

Defendants also rely on Payton v. New York, 445 U.S. 573, 603 (1980), in which the Supreme Court held that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Defendants seek to avail themselves of this "limited authority" by asserting in their motion that "[t]he officers reasonably believed that Wail . . . was residing at the business, because the business address was listed as his residence on his Florida driver's license." (Doc. 44 at 15). However, Ziehl testified in his deposition that he did not think anybody, including Wail, was residing at the gas station; it was "a business." (Ex. 3 to Doc. 50 at 66). According to Ziehl, "You can list your mailing address on your driver's license at whatever location you'd like. . . . [I]t didn't appear [the gas station] was being used" as a residence. (Id. at 67). Moreover, Ziehl stated in his deposition that he did not recall what Wail's last known address was. (Id. at 63). Ziehl clearly did not believe that the gas station was Wail's residence, and, though the standard is an objective rather than subjective one, there is no evidence that any reasonable officer would have so believed. The only evidence on this issue is Ziehl's

---

arrest, essentially arguing for the first time that Plaintiff is estopped from challenging the existence of probable cause. The Court rejects this contention for several reasons. First, Plaintiff stipulated to the *facts* described in the administrative charge, not to the existence of probable cause. Second, Defendants have raised this argument far too late in any event; they recounted the administrative proceeding—which ultimately was closed without any adverse action being taken against Plaintiff, (see Ex. J to Doc. 46)—in the facts section of their motion, but they did not argue in the motion that Plaintiff had "stipulated" to the existence of probable cause. Finally, the Court declines to hold that an unrepresented beverage licensee can "stipulate" to probable cause in an administrative action and thereby waive his right to bring a constitutional claim against a police officer under § 1983. In sum, this argument is both untimely and without merit.

testimony—that a driver's license address could be anything someone chose and not necessarily the driver's residence. By all descriptions, the gas station was merely a gas station, and though it had a back office containing a bed that Plaintiff used to sleep in while on breaks, there is no evidence that the officers had any knowledge of the office even being used for that purpose prior to the events at issue. In sum, there is no evidence that a reasonable police officer would have believed that Wail resided at the gas station, and thus no reasonable police officer could have relied on the "limited authority" described in Payton as a basis for a warrantless search in this case.

Defendants also argue another exception to the search warrant requirement—"exigent circumstances." "Exigent circumstances arise when the inevitable delay incident to obtaining a warrant must give way to a need for immediate action." United States v. Forker, 928 F.2d 365, 368 (11th Cir. 1991). "Situations in which exigent circumstances exist include: 'danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit.'" Bashir v. Rockdale County, 445 F.3d 1323, 1328 (11th Cir. 2006) (quoting United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002)). However, no evidence of any exigent circumstances that would justify a warrantless search has been presented. The officers already had the gas station surrounded,[5] and they were not in "hot pursuit" of Wail. The Court also rejects Defendants' assertion that because Wail was wanted on drug charges, there was a danger of destruction of evidence; no basis has

---

[5]Ziehl testified in his deposition that a perimeter was established around the building. (Ziehl December 2009 Dep., Ex. 3 to Doc. 50, at 98, 115). All of the exits and entrances were covered, and no one could have left the building without the officers' knowledge. (Id. at 102).

-11-

been presented for believing that Wail—the arrest warrant for whom was two and a half years old—had drugs in his possession or was using the office to store drugs. The "exigent circumstances" exception to the search warrant requirement simply does not apply here.

In sum, the officers did not have a legal basis to enter the back office of the gas station to search for Wail. Plaintiff had a privacy interest in that office—which was separate from the public space of his gas station's store area and inaccessible to the public—and he was within his rights to deny Defendants access to that office. The arrest of Plaintiff for denial of that access was therefore not based on probable cause. Under established law a reasonable officer would have been aware that entry into that office without consent, a search warrant, or exigent circumstances was not legally permissible, and a reasonable officer would also have known that exigent circumstances were not present here; thus, arguable probable cause is also lacking in this case. Therefore, in arresting Plaintiff the officers violated a clearly established constitutional right.

"[I]f an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest." Bashir, 445 F.3d at 1332. "[E]ven de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect." Zivojinovich v. Barner, 525 F.3d 1059, 1071 (11th Cir. 2008). Because the arrest of Plaintiff was, as determined above, not supported by probable cause or arguable probable cause, the officers used excessive force as a matter of law in effectuating that unlawful arrest.

The officers have not established entitlement to the defense of qualified immunity, and in fact the undisputed evidence establishes that in arresting Plaintiff they violated clearly

-12-

established constitutional rights. Thus, Defendants' motion for summary judgment on Count II must be denied.

### 2. Malicious Prosecution Claim (Count VIII)

In Count VIII of the Third Amended Complaint, Plaintiff brings a state law claim for malicious prosecution against Defendant Ziehl only. Ziehl urges entitlement to summary judgment on this count based on a failure of proof as to the requisite elements of the tort of malicious prosecution. As announced during oral argument, this portion of the summary judgment motion is well-taken and shall be granted.

"The common law tort of malicious prosecution includes the following six elements under Florida law: '(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.'" Fox v. Graff, 276 F. App'x 936, 939 (11th Cir. 2008) (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004)). Ziehl correctly urges that this claim fails because Plaintiff cannot establish the third element—that "the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff."

"A 'bona fide termination' of the proceedings has been described as 'a fancy phrase which means that the first suit, on which the malicious prosecution suit is based, ended in a manner indicating the original defendant's (and current plaintiff's) innocence of the charges

-13-

or allegations contained in the first suit, so that a court handling the malicious prosecution suit[] can conclude with confidence[] that the termination of the first suit was not only favorable to the defendant in that suit, but also that it demonstrated the first suit's lack of merit.'" Cohen v. Corwin, 980 So. 2d 1153, 1155-56 (Fla. 4th DCA 2008) (quoting Doss v. Bank of Am., N.A., 857 So. 2d 991, 994 (Fla. 5th DCA 2003)).

As earlier noted, Plaintiff entered into a pretrial intervention contract with regard to the resisting with violence charge. Defendant has submitted the Pretrial Intervention Contract (Ex. G to Doc. 46), which reflects several conditions that Plaintiff agreed to comply with and several costs that Plaintiff was required to pay. After Plaintiff complied with the terms of that contract, the charges were dropped by the state attorney. (Ex. H to Doc. 46).

"[I]t is the plaintiff's burden to establish that the [termination of the underlying cause of action] was 'bona fide.'" Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1356 (Fla. 1994). However, Plaintiff has not presented any evidence supporting a finding that the termination of the state court charge was a "bona fide termination" in his favor; in fact, other than noting that this case includes a malicious prosecution claim on the first page of his opposition memorandum (Doc. 49), Plaintiff did not mention or address the malicious prosecution claim at all. During oral argument, Plaintiff's counsel argued that pretrial agreements and negotiations regarding resolutions of charges can sometimes qualify as "bona fide terminations." There is case law supporting this general proposition. See, e.g., id. ("[B]argaining or negotiating, in and of itself, does not always negate the bona fide nature of the termination."). Indeed, "[w]hether a withdrawal or abandonment of a lawsuit constitutes a bona fide termination in favor of a person against whom a suit was brought[]

-14-

depends on the total circumstances surrounding the withdrawal or abandonment." Doss, 857 So. 2d at 995.

Plaintiff has not, however, presented any evidence or specific argument regarding circumstances surrounding the dropping of the resisting with violence charge, and he has not identified any circumstances tending to show that there was a "bona fide termination in his favor." The time for Plaintiff to present evidence of such circumstances was in response to Defendant's motion for summary judgment—a motion which is supported by evidence reflecting that the termination of the charge was not based on Plaintiff's innocence but on his satisfaction of the terms of a pretrial contract. Because Plaintiff has not responded with any evidence creating a fact issue as to the reason for the dropping of the charge, Defendant Ziehl is entitled to summary judgment on the malicious prosecution claim.

### III. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion for Summary Judgment (Doc. 44) filed by Defendants Ziehl and Milligan is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to Count VIII and is **DENIED** as to Count II.

**DONE** and **ORDERED** in Orlando, Florida this 7th day of May, 2010.

*[signature]*
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party